UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
CIVIL ACTION NUMBER:

| | |
|---|---|
| MEDHAT BARY,<br><br>                    Plaintiff,<br><br>vs.<br><br>MOHAMED EL-HUSSEINY EL-SHERIF, individually and doing business as "*El-Sherif's Restaurant and Lounge*" and as "*Cheraw Luxury Auto Sales;*" and A AND H SALES & SERVICE LLC, a South Carolina Limited Liability Company,<br><br>                    Defendants. | COMPLAINT FOR DAMAGES<br><br>Sounding in:<br><br>(1) Constructive Fraud;<br>(2) Unfair Trade Practices;<br>(3) Breach of Contract;<br>(4) Tortious Conversion; and<br>(5) Unjust Enrichment, *et seq.*<br><br>(Jury Trial Demanded) |

NOW COMES THE PLAINTIFF, MEDHAT BARY (hereinafter, sometimes referred to as simply "Plaintiff" and/or "Mr. Bary"), by and through his undersigned counsel of record, and – for a Complaint against the Defendants – says and alleges as follows:

**PARTIES AND JURISDICTION:**

1. That the Plaintiff, Medhat Bary, is an individual citizen and resident of the Country of Egypt (and also a citizen – though not a resident – of the United States), who – in the course of recent efforts to wind up his US business affairs (to include the matter at Bar) in Brunswick County, North Carolina – has maintained various North Carolina and South Carolina County mailing addresses in recent years.

2. The Defendant, Mohamed El-Husseiny El-Sherif, is an individual citizen and resident of Chesterfield County, South Carolina, where he does business as "*El-Sherif's Restaurant and Lounge*" and as "*Cheraw Luxury Auto Sales,*" and where he is also the sole owner and operator of Defendant, *A and H Sales & Service, LLC.*

3. The Defendant, *A and H Sales & Service, LLC*, is a limited liability company, organized and existing under the laws of the State of South Carolina, with its principal place of business in Chesterfield County, South Carolina.

4. This matter arises from automobile consignment sales in which the Plaintiff was the consignor, the Defendant, Mohamed El-Husseiny El-Sherif, was the entrusted consignee (with all of the attendant fiduciary duties this entails), and the Defendants sold certain of the consigned automobiles and failed and refused to pay the Plaintiff his share of the proceeds.

5. Hence, this Court has jurisdiction over the parties and the subject matter of this claim; and venue in its Florence Division is proper.

## FACTUAL ALLEGATIONS:

### Background: Defendants' Entirely Intertwined Operations:

6. Upon information and belief, the Defendant, Mohamed El-Husseiny El-Sherif, and his aforementioned *A and H Sales & Service, LLC*, and his two aforementioned d/b/a's (*El-Sherif's Restaurant and Lounge* and *Cheraw Luxury Auto Sales*) all are – and were, at all times relevant herein – engaged in the shared sole purpose of garnering as much revenue (and otherwise accumulating as much/many assets) for Mohamed El-Husseiny El-Sherif as possible, with Mohamed El-Husseiny El-Sherif therefore, all times relevant herein:

    (i)    Operating all three such businesses (*A and H Sales & Service, LLC*, and *El-Sherif's Restaurant and Lounge*, and *Cheraw Luxury Auto Sales*) as grossly undercapitalized "shams" and "alter-egos" for himself and for his own personal financial gain;

    (ii)    Commingling his personal assets with the assets of all three such businesses, and otherwise at all times failing to observe or otherwise adhere to the statutory and other operational formalities required of limited liability companies under South Carolina law;

    (iii)    siphoning operating capital and other funds from *A and H Sales & Service, LLC,* for his own personal use;

(iv)  thereby causing *A and H Sales & Service, LLC* to be insolvent;

(v)  thereby causing *A and H Sales & Service, LLC,* to otherwise be unable to pay its bills;

(vi)  with no formal action or function of managers and officers *A and H Sales & Service, LLC*; and

(vii)  with no formal company records kept; and with *A and H Sales & Service, LLC,* merely a façade for the personal operations of Mohamed El-Husseiny El-Sherif (and/or for the operations of his other personal business enterprises), with the financial and other activities of said limited liability company indistinguishable from the personal financial and other d/b/a activities of Mohamed El-Husseiny El-Sherif.

7. It would thus be fundamentally unjust and unfair for the acts of *A and H Sales & Service, LLC*, at issue herein to not be regarded as the acts of Mohamed El-Husseiny El-Sherif, and vice versa.

8. The "corporate (or LLC) veil" of *A and H Sales & Service, LLC*, should therefore be "pierced," and Mohamed El-Husseiny El-Sherif held personally liable for any and all contractual and other obligations of *A and H Sales & Service, LLC*, at issue herein.

9. Regardless, at all times at issue herein, the Defendant, Mohamed El-Husseiny El-Sherif, and his aforementioned *A and H Sales & Service, LLC,* and his two aforementioned d/b/a's (*El-Sherif's Restaurant and Lounge* and *Cheraw Luxury Auto Sales*) are, and were – by virtue of their aforesaid common purpose and shared ownership – so inextricably intertwined, each with one another, so as to be in no fashion "independent" from one another, but rather in a *de facto,* multilateral principal/agent relationship with one another – so that all acts and omissions and policies and practices and all knowledge of each such entity is imputed to both Defendants in this litigation, under a theory of *respondeat superior*, and each of the Defendants in this litigation is otherwise vicariously liable for all conduct of the other (and of Mr. El-Sherif's two aforementioned d/b/a's, *El-Sherif's Restaurant and Lounge* and *Cheraw Luxury Auto Sales*).

10. In other words, even if the Defendant, Mohamed El-Husseiny El-Sherif, contends that the financial and other obligations at issue in this litigation were undertaken by *A and H Sales & Service, LLC*, or vice versa, this is of no moment, because Mohamed El-Husseiny El-Sherif is directly and vicariously liable for all acts and obligations of his *A and H Sales & Service, LLC*, and vice versa.

### Background: Plaintiff's Business Operations:

11. Mr. Bary lived and worked in Brunswick County, North Carolina, from approximately 2010 until September 6, 2025, during which time he operated a successful used automobile business known as "Saabman."

12. Mr. Bary's business model – for Saabman – was to purchase damaged vehicles with salvaged titles, make necessary repairs, and market the vehicles for resale at deeply discounted prices (relative to the cost of comparable vehicles without salvage titles).

13. Mr. Bary originally called the business "Saabman" because his inventory consisted largely of Saab motor vehicles. However, Mr. Bary later expanded his business into the repair and sales of other brands, including Cadillacs.

14. Mr. Bary's Saabman business thrived and won the admiration of others in the automotive industry, including Defendant.

15. In late 2023, as Mr. Bary approached his 70th birthday, he decided to make a significant lifestyle change.

### Plaintiff's Decision to Relocate and Close His Business:

16. Egypt is not only Mr. Bary's current home country, it is his country of origin. And so, a few years ago, Mr. Bary made the difficult decision to wind down his US operations and return to his motherland, while retaining only limited residual ties to the United States (no real estate, no business, just friends and family).

17. When Mr. Bary closed his Saabman automobile sales/service operations, his dealership left him with a remaining/residual inventory of thirty-one (31) Cadillac motor vehicles that needed to be sold.

18. Needless to say, Mr. Bary faced significant logistical challenges if he hoped to liquidate this substantial inventory, even as he sought to free himself up to relocate/return to Egypt.

### Plaintiff's Resultant Relationship with Defendant:

19. The Defendants are also in the automotive business, with Mohamed El-Husseiny El-Sherif – as aforesaid – owning and operating *A and H Sales & Service, LLC*, a South Carolina used car dealership.

20. But, Mr. Bary and Mr. El-Sherif have more in common than just the auto sector; they are fellow Egyptians who share cultural ties and a common heritage.

21. Upon their introduction, the Defendant, Mohamed El-Husseiny El-Sherif, was thus at least ostensibly sympathetic to Mr. Bary's desire to return to their shared country of origin.

22. However, Mr. El-Sherif was also aware that Mr. Bary possessed a significant inventory of valuable vehicles.

### The Subject Consignment Contract:

23. Embracing what appeared to be aligned interests, Mr. Bary and Mr. El-Sherif entered into an express consignment contract in or around June of 2024, wherein these parties specifically agreed that Mr. Bary (as owner and consignor) would deliver possession of the aforementioned Cadillac motor vehicles [and their physical titles, though <u>not</u> titled in Mr. El-Sherif's name] to Mr. El-Sherif (as consignee) to sell on Mr. Bary's behalf, with Mr. Baray retaining legal ownership until the vehicles were sold.

24. As for the Subject Consignment Contract's finer details, suffice to say that (per this Court's notice-pleading requirements, of merely "*a short and plain statement of the claim showing that the pleader is entitled to relief*"):

(i) Vehicles to be sold at fair market value, at retail location(s) of Mr. El-Sherif's choosing;

(ii) Sales proceeds to be divided equally (50/50) between Mr. Bary and Mr. El-Sherif, with all vehicles held in trust by Mr. El-Sherif until sold, and with Mr. El-Sherif providing a full accounting of the proceeds of each vehicle's sale, along with Mr. Bary's share of the sales proceeds, immediately upon the consummation of each such sale;

(iii) Lawful title to each sold vehicle to be conveyed to its respective buyer upon sale via dealer-law-compliant title "reassignment" documentation, executed by Mr. Bary; and

(iv) As additional inducement, compensation and other consideration for Mr. El-Sherif to enter into the Subject Consignment Contract, Mr. Bary agreed to convey to Mr. El-Sherif all of Mr. Bary's remaining automobile sales and service tools and equipment (from pneumatic power tools, to lifts, and everything in between) with a fair market value in excess of $100,000.00.

25. The Subject Consignment Contract is – and was, at all times relevant herein – a clear, lawful, enforceable contract, supported by requisite adequate consideration, mutual assent, and a meeting of the minds.

26. To the extent the Defendant, Mohamed El-Husseiny El-Sherif, contends that Mr. Bary's Subject Consignment Contract was actually with Defendant, *A and H Sales & Service, LLC* – which is hereby expressly denied – Mr. Bary hereby pleads, in the alternative, that Mr. El-Sherif is personally responsible for any *A and H Sales & Service, LLC* liability in this litigation regardless, via the vicarious liability theory of *respondeat superior* and via the fundamentally equitable legal theory and remedy of *piercing the corporate veil*.

### Conveyance of Vehicles to Mr. El-Sherif:

27. Upon Mr. El-Sherif's aforesaid promises and contractual commitments, Mr. Bary physically conveyed the aforementioned tools and the aforementioned 31 Cadillac vehicles and their [unsigned] titles to Mr. El-Sherif in June of 2024.

28. These vehicles – like the accompanying tools – had significant value, with their collective fair market value also exceeding $100,000.00.

29. As aforesaid, Mr. Bary entrusted these valuable assets to Mr. El-Sherif based on their shared cultural heritage and Mr. El-Sherif's express promises to sell the vehicles and remit Mr. Bary's share of the proceeds to Mr. Bary.

**Mr. El-Sherif's Initial Performance**:

30. After receiving the subject 31 Cadillacs, Mr. El-Sherif successfully sold 18 and duly paid Mr. Bary his 50% share of the sales proceeds, sometimes using – for reasons known only to Mr. El-Sherif – checks drawn on a checking account in the name of his LLC, *A and H Sales & Service, LLC*.

31. Mr. El-Sherif's ensuing sale of the remaining 13 Cadillacs – and his embezzlement of ALL of the proceeds of these ensuing sales – lies at the heart of this lawsuit.

32. And, make no mistake, these monies were wrongfully withheld by Mr. El-Sherif in flagrant breach of his fiduciary duties to Mr. Bary, as the consignee of Mr. Bary's automobiles.

**Mr. El-Sherif's Subsequent Material Breaches and Embezzlement**:

33. After full performance in his consignment sales of the first 18 Cadillacs, Mr. El-Sherif sold the remaining 13 Cadillacs for substantial monies (in excess of $75,000.00) and apparently delivered their titles to their respective buyers, while paying Mr. Bary none of the proceeds of such sales.

34. In all candor to the Court, Mr. Bary does not know how Mr. El-Sherif could have possibly managed to deliver honest, lawful title to vehicles that were not in his name (or his LLC's name) to buyers, but – in good faith – Mr. Bary believes and hereby alleges that such title conveyances could not have taken place without some sort of forgery or other fraud carried out by Mr. El-Sheriff in his consummation of the aforementioned dealer-to-dealer title "reassignment" documentation and transactions.

35. And, again, make no mistake, Mr. El-Sherif's fraudulent manipulation of the motor vehicle titles entrusted to him by Mr. Bary (right along with the subject motor vehicles) was likewise in flagrant breach of Mr. El-Sherif's fiduciary duties to Mr. Bary, as the consignee of Mr. Bary's automobiles and the trustee of Mr. Bary's automobile's titles.

36. Responsive to his good faith concerns regarding title reassignment fraud/forgery, Mr. Bary notified the South Carolina Department of Motor Vehicles, whereupon a law enforcement investigation was initiated.

37. Shortly after the commencement of this DMV title investigation, Mr. El-Sherif frantically called Mr. Bary, asked him to withdraw his complaint/report, and promised to make good on his financial arrearage to Mr. Bary, by delivering to Mr. Bary one Ford F-150 truck, two Porsche sportscars, and two other motor vehicles (all of which such vehicles Mr. El-Sherif admitted to be subject to financial encumbrances securing loans from AFC Bank to Defendant, *A and H Sales & Service, LLC*, but all of which such encumbrances Mr. El-Sheriff promised to reimburse Mr. Bary for satisfying – by means of post-dated checks – thereby freeing Mr. Bary to sell the vehicles and recoup Mr. El-Sherif's arrearage).

38. Taking mercy on a man he mistakenly thought to be a friend, fallen on hard, cash-flow-challenged times, Mr. Bary relented and agreed to Mr. El-Sherif's reimbursement proposal.

39. Collectively, the five vehicles involved in Mr. El-Sherif's aforementioned reimbursement proposal had a fair market value of approximately Thirty-Five Thousand Dollars ($35,000.00).

40. As inducement for Mr. Bary to accept the encumbered vehicles as restitution for his nonpayments, Mr. El-Sherif issued five (5) personal checks to Mr. Bary in various amounts.

41. These checks were post-dated, meaning they were dated for future dates rather than the date of issuance.

42. The checks were scheduled to become payable, each approximately one month apart, over a six-month period.

43. Mr. El-Sherif promised that he would timely fund all of these checks, which would allow Mr. Bary to make recoup the monies he would be required to pay out in order to secure free title on these five vehicles (so he could sell them, and recapture the money Mr. El-Sherif owed him).

44. Upon information and belief, the Defendant, Mr. El-Sherif, deliberately maintains – and, at all times relevant herein, maintained – two bank accounts at separate banks with confusingly similar names. At First Citizens Bank, Defendant maintains plenty of working capital to fund all three of the businesses named in this lawsuit. However, Defendant maintains another checking account at First Bank that he also uses in his business dealings. This account is undercapitalized with very low funds. It is well understood in the local business community where Defendant lives that if he writes a significant check from First Bank, there will be insufficient funds and the check will bounce.

45. Upon information and belief, the Defendant, Mr. El-Sherif, has engaged in a pattern and practice of issuing worthless checks from his First Bank account as a means of inducing potential payees to complete transactions while avoiding immediate payment obligations. Defendant deliberately maintains two separate bank accounts with confusingly similar names—one at First Citizens Bank and another at First Bank—and exploits this similarity to deceive creditors and business counterparties. Defendant's calculated use of his undercapitalized First Bank account to issue post-dated checks, rather than drawing on his adequately funded First Citizens Bank account, demonstrates a deliberate scheme to delay and ultimately avoid payment while maintaining possession of vehicles and/or funds received in trade. This practice constitutes fraud in the inducement, as Defendant creates

the false impression of creditworthiness and intent to pay, when in fact he knows or should know that the checks will not be honored when presented for payment.

46. The Defendant, Mr. El-Sherif's issuance of five post-dated checks to the Plaintiff, Mr. Bary, all drawn on his First Bank account that Defendant knew to be insufficiently funded, constitutes a violation of South Carolina Code of Laws § 34-11-60 (South Carolina's so-called "worthless check statute") and provides clear evidence of Defendant's fraudulent intent from the inception of the transactions at issue in this lawsuit. The Defendant's maintenance of two bank accounts with similar names—First Citizens Bank (adequately capitalized) and First Bank (chronically undercapitalized)—is not coincidental but rather intentional, and a sophisticated tool of deception. A reasonable person in the business community does not issue multiple post-dated checks on an undercapitalized account at First Bank while maintaining sufficient funds at First Citizens Bank unless that person intends to defraud the payee.

47. Defendant's sophisticated manipulation of multiple business entities and strategically maintained bank accounts demonstrates that this was not mere negligence or oversight, but rather a deliberate and premeditated scheme to obtain Mr. Bary's vehicles without providing legitimate consideration in return.

48. Make no mistake, this was a third act in breach of Mr. El-Sherif's fiduciary duties to Mr. Bary, and this time constituted an act of overt fraud and the crime of "check fraud."

**Plaintiff's Satisfaction of Vehicle Liens**:

49. In detrimental reliance upon Mr. El-Sherif's fraudulent misrepresentations, Mr. Bary paid AFC Bank a total of approximately Thirty-Five Thousand Dollars ($35,00.00) in order to effectuate release of the aforementioned liens on Mr. El-Sherif's five makeup vehicles.

50. Mr. Bary made these payments in reliance on Mr. El-Sherif's representations that his post-dated checks would be honored.

51. By satisfying these liens, Mr. Bary freed Mr. El-Sherif from his loan obligations to AFC Bank underlying these liens.

**Defendant's Bounced Checks and Breached Promises**:

52. The first check issued by Mr. El-Sherif to Mr. Bary was for the lien payoff on the Ford F-150 truck. This check successfully cleared when presented for payment.

53. The second check was for lien payoff on one of the Porsche automobiles. This check was returned by the payor bank for nonsufficient funds, as was the third check (for lien payoff on the second Porsche).

54. The second and third dishonored checks together totaled approximately Twenty-Four Thousand Dollars ($24,000.00), at which point Mr. Bary elected to cut his losses, and retain counsel.

55. Hence, the fourth and fifth checks, which together total approximately an additional Ten Thousand Dollars ($10,000.00), have never been presented for payment.

56. For what it's worth, Mr. El-Sherif has now stated the obvious, and conceded that these remaining checks will also not be honored if presented for payment.

57. After the first two checks were dishonored, Mr. Bary and Mr. El-Sheriff had several conversations regarding payment.

58. During these conversations, Mr. El-Sherif has repeatedly acknowledged his debt to Mr. Bary and promised to make payments as soon as he receives money from other sources.

59. However, despite these promises, Mr. El-Sherif has failed and refused to make good on his arrearage to Mr. Bary, clearly intent upon exploiting the reality that Mr. Bary has moved overseas.

60. The undersigned attorney will not allow Mr. Bary's residency in Egypt to hamstring this lawsuit in the United States.

//

## PLAINTIFF'S FIRST CAUSE OF ACTION
### (Constructive Fraud – against all Defendants)

61. Plaintiff hereby realleges and incorporates by this reference as if fully set forth herein each and every allegation contained in the preceding paragraphs of this Complaint.

62. Mr. El-Sherif's Subject Consignment Contract with Mr. Bary inarguably put Mr. El-Sherif in a position of disproportionate trust (and Mr. Bary in a position of disproportionate vulnerability) vis-à-vis a valuable collection of assets/automobiles, and Mr. El-Sherif's Subject Consignment Contract with Mr. Bary thus inarguably created a relationship of trust and confidence, with attendant fiduciary duties of loyalty and utmost good faith with regard to the parties' dealings and the money arising therefrom.

63. Mr. El-Sherif's aforementioned wrongful embezzlement and conversion of consignment sales proceeds which he held solely in trust for Mr. Bary constitutes breach of trust; and this breach of trust arises to the level of breach of fiduciary duty and constructive fraud, to say nothing of embezzlement.

64. Likewise, Mr. El-Sherif's wrongful retention of tools conveyed to him as inducement for his Subject Consignment Sales Contract with Mr. Bary also constitute a breach of trust; and this breach of trust also arises to the level of breach of fiduciary duty and constructive fraud.

65. As a direct and proximate result of the above-referenced constructive fraud by the Defendants, the Plaintiff, Medhat Bary, has been deprived of substantial monies in excess of $35,000.00, and tools (valued in excess of $100,000.00) – all of which such wrongfully converted and retained monies and tools must be disgorged by the Defendants – and Mr. Bary has suffered additional compensatory and other consequential damages, all to the Plaintiff's damages in an amount in excess of the jurisdictional minimum of this Court, plus interest from the date of breach.

66. The Plaintiff is also entitled to punitive damages for such constructive fraud.

## PLAINTIFF'S SECOND CAUSE OF ACTION
### (Unfair Trade Practices – against all Defendants)

67. Plaintiff hereby realleges and incorporates by this reference as if fully set forth herein each and every allegation contained in the preceding paragraphs of this Complaint.

68. The Defendants obviously engaged in all of the conduct at issue herein in commerce and in a manner affecting commerce.

69. All such conduct was deceptive and/or had a tendency to deceive, and was otherwise harmful to the commercial public in general and the Mr. Bary in particular.

70. South Carolina case law has held that conduct which constitutes a breach of fiduciary duty and constructive fraud is sufficient to support an Unfair Trade Practices claims.

71. S.C. Code Ann. § 39-5-10, *et seq.,* provides for mandatory recovery of treble damages and attorney's fees if a court finds a violation of the Unfair Trade Practices Act.

72. As a direct and proximate result of the above-referenced Unfair Trade Practices by the Defendants, the Plaintiff, Medhat Bary, has been deprived of substantial monies in excess of $35,000.00, and tools (valued in excess of $100,000.00) – all of which such wrongfully converted and retained monies and tools must be disgorged by the Defendants – and Mr. Bary has suffered additional compensatory and other consequential damages, all to the Plaintiff's damages in an amount in excess of the jurisdictional minimum of this Court, plus interest from the date of breach.

## PLAINTIFF'S THIRD CAUSE OF ACTION
### (Breach of Contract – Against All Defendants)

73. Plaintiff hereby realleges and incorporates by this reference as if fully set forth herein each and every allegation contained in the preceding paragraphs of this Complaint.

74. The Plaintiff fulfilled all of his duties under the Subject Consignment Sales Contract with the Defendants.

75. The Defendants – in the conduct alleged above – materially breached their Subject Consignment Contract with the Plaintiff.

76. As a direct and proximate result of the above-referenced material breaches of the Subject Consignment Contract, the Plaintiff, Medhat Bary, has been deprived of substantial monies in excess of $35,000.00, and tools (valued in excess of $100,000.00) – all of which such wrongfully converted and retained monies and tools must be disgorged by the Defendants – and Mr. Bary has suffered additional compensatory and other consequential damages, all to the Plaintiff's damages in an amount in excess of the jurisdictional minimum of this Court, plus interest from the date of breach.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
### (Tortious Conversion – Against All Defendants)

77. Plaintiff hereby realleges and incorporates by this reference as if fully set forth herein each and every allegation contained in the preceding paragraphs of this Complaint.

78. The tort of conversion requires (1) an authorized assumption and exercise of right of ownership over property belonging to another and (2) a wrongful deprivation of it by the owner, regardless of the subsequent application of the converted property.

79. The Defendants' afore-described acts of taking funds and tools and converting them to their own use constitute acts of tortious conversion.

80. As a direct and proximate result of the above-referenced tortious conversions, the Plaintiff, Medhat Bary, has been deprived of substantial monies in excess of $35,000.00, and tools (valued in excess of $100,000.00) – all of which such wrongfully converted and retained monies and tools must be disgorged by the Defendants – and Mr. Bary has suffered additional compensatory and other consequential damages, all to the Plaintiff's damages in an amount in excess of the jurisdictional minimum of this Court, plus interest from the date of breach.

## PLAINTIFF'S FIFTH CAUSE OF ACTION
(Unjust Enrichment – Against All Defendants)

81. Plaintiff hereby realleges and incorporates by this reference as if fully set forth herein each and every allegation contained in the preceding paragraphs of this Complaint.

82. The Plaintiff furnished the Defendants goods (automobiles and tools) having a fair and reasonable value of over one hundred thousand dollars ($100,000.00), and the Defendants knowingly and willingly solicited from the Plaintiff and thereafter accepted these goods and services, while knowing full well that the Plaintiff expected to be and required that he be paid for said goods.

83. The Plaintiff has made demand on the Defendants for payment, and the Defendants have willfully failed and refused to pay, without just cause or legal excuse.

84. Defendants' failure to pay the Plaintiff will result in its *unjust enrichment*, unless the Court orders payment to the Plaintiff.

///

///

///

///

///

///

///

///

///

///

///

//

WHEREFORE, the Plaintiff prays this Honorable Court that:

a. A jury trial be had on all issues so triable;

b. For all of its contractual and other incidental and consequential compensatory damages in an amount according to proof;

c. For disgorgement of all monies and tools (or the value thereof) garnered by the Defendants in the course of the Plaintiff's full performance under the Consignment Sale Contract that the Defendants subsequently materially breached;

d. For punitive damages;

e. Alternatively, for treble damages;

f. For an award of its reasonable attorney's fees;

g. For interest according to proof;

h. That the cost of this action be taxed against the Defendant, including attorney's fees, as may be allowed by law; and

f. That the Plaintiff have and recover such other and further relief as the Court deems just and proper.

Respectfully submitted, this 22nd day of January, 2026.

**The Law Office of Michael Davenport, P.C.**

/S/ Michael S. Davenport
Michael S. Davenport
South Carolina Bar No.: 14216
Attorney for the Plaintiff
2505 South College Road
Wilmington, North Carolina 28412
Phone:   910-362-9500
Fax:     910-799-8496
Email: msd@mdavenportlaw.com